IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOY BATEMAN, )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NO. 99-PWG-1337-S
)
WAL-MART STORES, INC., )
)
    Defendant. )

## MEMORANDUM OF OPINION

Joy Bateman, plaintiff herein, filed this complaint against Wal-Mart, defendant, alleging disability discrimination in violation of Titles I and II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1211 *et seq.*, § 1231 *et seq.* and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* The matter is before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and L.R. 73.2.

Wal-Mart has filed a motion for summary judgment (document #29). Wal-Mart contends that Bateman cannot establish a *prima facie* case of discrimination under the ADA because she cannot show by a preponderance of the evidence that she has a qualifying disability or was regarded by defendant as having a disability. Ms. Bateman argues that she is qualified person with a disability and that defendant discrimination against her by not reasonably accommodating her by transferring to a department manager position away from dyes and unwashed fabric.

The following facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff, the non-moving party.

41

Ms. Bateman was employed with defendant Wal-Mart from March 1981 until January 1994 and again from April 1995 until June 30, 1998. (Bateman depo. pp.14,15,33,59). Ms. Bateman suffers from a chemical sensitivity/allergy to certain dyes and unwashed fabrics. (Bateman depo., pp.69-74,80). From 1981 to 1994, Ms. Bateman worked in three separate positions; the snack bar, receiving and the claims/risk loss department. (Bateman depo., pp.14,16). Later she also served as a Department Manager in the Hardware, Paints, Pets, Arts, Crafts and Fabrics Departments. (Bateman depo., pp. 17,21,22).

Upon her return to Wal-Mart in 1995, Ms. Bateman worked in the Claims Department where her duties included completing accounting forms and records, inputting and retrieving information, using computers, maintaining records and logs, packing damaged merchandise back into boxes, preparing mail, filing routine paperwork, retrieving information from microfiche, and scanning merchandise on the hand unit Tailzon. (Bateman depo., pp. 42-47). During her deposition, Ms. Bateman testified that she could perform the essential job functions associated with the claims positions both while employed at Wal-Mart and at the time of her deposition. (Bateman depo., pp. 42-47, Plaintiff's Exhibit 2). Ms. Bateman remained in Claims until September of 1997 (Bateman depo., p. 49) when she was promoted to Zone Manager/Department Manager[1] of the Arts, Crafts, and Fabrics Department. (Bateman depo., p. 49). Ms. Bateman testified that she had briefly managed the Arts, Crafts and Fabric Department during her first period of employment with Wal-Mart and during that period she did not experience rashes nor any allergic reaction. (Bateman depo., pp. 24 & 50). The duties and responsibilities of Department Manager include competition shopping, completing accounting forms and records,

---

[1] According to Personnel Manager Regina Henson, the position of department manager and zone manager are the same thing. (Henson depo., 13).

customer assistance, maintaining record logs, management functions, preparing/mailing/filing routine paperwork, changing prices, pricing merchandise, scanning merchandise hand unit, store tour, supervisor functions and zone defense. (Henson depo., p.13). Ms. Bateman testified that throughout her employment and to the present day she was able to perform all of the duties and responsibilities of department manager as well as the essential job functions listed on plaintiff's Exhibit #4, the job matrix for department managers, for all departments except for Domestics, Soft Lines, and Sporting Goods. (Bateman depo., pp. 53-55).

According to Regina Henson, Personnel Manager, the Jasper Wal-Mart is divided into various departments including candy, health and beauty aids, cosmetics, stationary, paper goods, electronics, film/camera, toys, pets, sporting goods, automotive, hardware, paint, housewares, garden shop, furniture, fabrics, domestics, men's wear, ladies' wear, boys wear and girls wear, infants, jewelry, photo lab, pharmacy, lingerie, bakery, produce, meats, deli, diary, and dry grocery. (Henson depo., pp.38-40). The duties and responsibilities for a department manager are the same in each department. (Henson depo., p.15; Owens depo., p.3).

In November 1997, Ms. Bateman began to suffer from what she considered to be flu-like symptoms. (Bateman depo., p. 69). These symptoms included coughing, sneezing, trouble breathing and being tired all of the time. (Bateman depo., p. 69). Her symptoms continued to worsen after the first of the year. (Bateman depo., p. 69). In April of 1998, Ms. Bateman broke out in a rash and her eyes and throat swelled, causing her to have difficulty breathing. (Bateman depo., p. 70). Ms. Bateman's rash would cover her cheeks, forehead, chin, and neck. (Bateman depo., p. 72). Her eyes would swell shut so that she could not see and her throat would also swell making breathing difficult. (Bateman depo., pp. 71-72). Ms. Bateman testified that she only had these

symptoms while at Wal-Mart. (Bateman depo., p, 74). Although allergy tests came back normal, Dr. Bill Yates, Ms. Bateman's family doctor, eventually diagnosed Ms. Bateman as having an allergy. Dr. Yates suggested that Ms. Bateman change departments at work. (Bateman depo., pp. 70,76-77). Dr. Yates prescribed Zithro Packs, Decadrol and Decadrol injections which prevented the rash and the swelling of the eyes and throat, and "helped everything to settle down." (Bateman depo., p.75). While employed at Wal-Mart, Ms. Bateman did not consult any allergy specialists. (Bateman, depo. p.78).

In April of 1998, Ms. Bateman notified her Assistant Manager, Carl Simmons, of her allergy and that the doctor suspected she was allergic to fabric or dyes. (Bateman depo., pp. 80-82). Ms. Bateman did not, however, ask to be moved to another department at that time. In May of 1998, Ms. Bateman went to Simmons again regarding her condition and asked to be transferred to a different department. (Bateman depo., p. 82, Simmons' depo., p.41). Simmons informed Bateman that he would need to talk to Steve Geisler, the co-manager responsible for scheduling. (Bateman depo., p. 82).

Mr. Simmons told Geisler about his conversation with Ms. Bateman and that she had informed him that Ms. Bateman reported that the doctor believed the allergies were due to dyes. (Simmons depo., pp.41,61, Exhibit #7). Several weeks passed. Ms. Bateman was not transferred and her symptoms continued. (Bateman depo., p. 82). Toward the end of May 1998, Ms. Bateman went to see Allen Thomas, Store Manager. (Bateman depo., p. 82). Mr. Thomas informed Ms.

4

Bateman that he knew nothing of her request to be transferred and that she needed to talk with Mr. Geisler. (Bateman depo., p. 83).[2]

Ms. Bateman spoke with Mr. Geisler. She told him that she was allergic to the dyes in the fabric and that she needed to be moved from that department. Mr. Geisler said he would look into it. After two or three weeks, Ms. Bateman again went to Mr. Geisler (approximately the second week of June, 1998) and told him that something had to be done. (Bateman depo., pp. 83-84). Ms. Bateman was scheduled to go on vacation for nine days. Mr. Geisler told her that upon her return she would be moved. (Bateman depo., pp. 83-84).

The Friday before Ms. Bateman was to leave for her vacation, Mr. Geisler told her that there were no department manager positions available. He said that she would have to step down to sales clerk position. (Bateman depo., p. 85). Ms. Bateman agreed to the reassignment. (Bateman depo., p.85).

While away from Wal-Mart, Ms. Bateman suffered none of the allergy symptoms she had been experiencing. On June 29, 2000, upon her return from vacation, she was told she had been assigned to the Lingerie department. (Bateman depo., p. 86). Ms. Bateman objected, stating "I can't work in Lingerie, that's basically just like Fabric Department, it's fabrics." (Bateman depo., p. 86).[3] Ms. Bateman worked in Lingerie from 5:00 a.m. to 2:00 p.m. and her eyes and throat again swelled. (Bateman depo., p. 87). Ms. Bateman's husband picked her up and took her to the doctor. (Bateman

---

[2] During his deposition, Mr. Thomas testified that he was aware that Ms. Bateman had an allergy to the dyes and fabrics "really close to when she quit." (Thomas depo., p. 35). Mr. Thomas specifically recalled during his deposition that Geisler told him about Ms. Bateman's allergy to the dyes in fabrics and that she wanted out of the fabric department. (Thomas depo., pp.45,47).

[3] Ms. Bateman's deposition testimony indicates that she did not tell anyone at Wal-Mart that she could not work in lingerie before the assignment was made. (Bateman depo., pp.86-87).

depo., p. 87). After her doctor's visit, Ms. Bateman returned to Wal-Mart in hopes of showing management how the unwashed fabrics affected her. (Bateman depo., p. 88). Upon her return she spoke with Carl Simmons and Dudley Owens. (Bateman depo., pp. 87-88). She also tried to locate the Store Manager, Allen Thomas, however he was not in the store. (Bateman depo., p. 88). Ms. Bateman again told Mr. Simmons and Mr. Owens of her condition and of her need to work away from fabrics and dyes. (Bateman depo., p. 89). Upon seeing Ms. Bateman, Mr. Simmons commented that she had not looked that way when she came in that morning. Mr. Owens asked Ms. Bateman if she had had a chemical test to see what, if anything, she was allergic to. Ms. Bateman told Mr. Owens that there was no place in the United States that gives a test for chemicals. (Bateman depo., p.89). Mr. Owens then said "for all we know you could be allergic to the cardboard boxes that we have and in that case we don't need you." (Bateman depo., p.90). The next morning, June 30, 1998, Ms. Bateman ended her employment at Wal-Mart stating on the exit interview form that her leaving was "due to health." (Bateman depo., pp.60,91; Plaintiff's Exhibit 9).

    After returning from vacation, Ms. Bateman learned that three department managers had transferred to different departments while she was away–Tina Smith was transferred from Soft Lines to Appliances, Sally Turner was transferred from Health and Beauty Aids to Soft Lines, and Jason Brown was transferred from Appliances to Health and Beauty Aids. (Bateman depo., pp. 104-104; Thomas depo., p.25; Henson depo., pp.62-65). Ms. Bateman states that she could have worked in Appliances or Health and Beauty Aids. (Bateman depo., p. 105).

Department managers are able to move laterally from one department to another. (Thomas depo., p.22; Simmons depo., pp.24, 27; Owens depo., p.33; Henson depo., pp.60-61). Such lateral transfers are encouraged by Wal-Mart as cross training. (Thomas depo., p.22). Mr. Thomas testified that there is no formal process for these lateral transfers. (Thomas depo., p.22). Such lateral transfers by department managers can be initiated by turnover or by management or by an employee. (Thomas depo., p.23). According to Simmons a co-manager must approve a transfer from one department to another. (Simmons depo., p.24). All four of Wal-Mart's witnesses testified that they were aware of lateral transfers by department managers and Owens stated that two or three department managers may rotate at a time. (Thomas depo., p.25; Simmons depo., p.27; Owens depo., p.33; Henson depo., pp.60-61).

Mr. Thomas testified that he was aware that Ms. Bateman quit due to health reasons. (Thomas depo., p.76). He also stated that he was not aware of any reason Ms. Bateman could not perform the duties and responsibilities of department manager in other departments. (Thomas depo., pp.79-82).

Since leaving Wal-Mart, Ms. Bateman has been employed by at least three employers. Ms. Bateman worked for North Alabama Lumber, a retail business, in Jasper, Alabama beginning in July of 1998. (Bateman depo., pp.60-62). Ms. Bateman's job functions at North Alabama Lumber consisted of waiting on customers, stocking and running the register. (Bateman depo., p.62). Ms. Bateman left her employment at North Alabama Lumber after several months to take a job with Bull Building Supply in Jasper. (Bateman depo., pp.62-63). At Bull Building Supply, Ms. Bateman worked in "retail sales on the floor." (Bateman depo., p.63). Ms. Bateman left Bull Building Supply after three or four months to go to work with Premier Credit Incorporated

as a loan officer. (Bateman depo., pp.10,66-67). Ms. Bateman's job duties at Premier Credit include answering telephones, taking message, taking applications, running credit bureaus, filing and dealing with customers. (Bateman depo., pp.10,12).

Since leaving Wal-Mart, she has sought treatment with an allergy specialist; however, tests revealed no abnormality. (Bateman depo., p.97). Ms. Bateman testified that her allergy only precludes her from working in clothing departments. (Bateman depo., p.103). She also testified that allergies limit her ability to browse while she shops; however, she is still able to shop with some exposure to fabrics. (Bateman depo., pp.95,103).

Ms. Bateman filed for unemployment through the Alabama Department of Industrial Relations ("DIR"). DIR initially determined that Ms. Bateman was not entitled to unemployment because she had voluntarily resigned her position; however, Ms. Bateman appealed the initial determination. After a hearing on her claim it was determined that Ms. Bateman was entitled to unemployment on the basis that her resignation was:

> primarily due to allergies caused by the work environment. It is evident that the claimant did give the employer a reasonable opportunity to resolve her problem.... The claimant did exercise good faith in trying to work in a different department.... It is further evident that the claimant gave the employer a reasonable opportunity to resolve her problem and they failed to do so. Thus, her reason for leaving does stand the test of reason and would be considered a good cause connected with the work for leaving.

(Plaintiff's Exhibit #10).

On September 30, 1998 Ms. Bateman filed her charge of discrimination with the EEOC alleging discrimination on the basis of disability. (Exhibit #11).

8

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

Because Wal-Mart does not dispute that Ms. Bateman has an allergy or chemical sensitivity to dyes and unwashed fabric, the court will assume that Bateman has such a sensitivity even though the record is devoid of any medical evidence of this fact.

"In order to establish a *prima facie* case of discrimination under the ADA, [Bateman] must demonstrate that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

A "disability" is defined as:

(A)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B)  a record of such impairment; or
(C)  being regarded as having such an impairment.

42 U.S.C. § 12102(2).

The EEOC regulations define "physical or mental impairment," "substantially limits," and "major life activities":

(h)  Physical or mental impairment means:

(1)  Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2)  Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(i)  Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(j)  Substantially limits–

10

> (1) The term substantially limits means:
>
>> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>>
>> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. Section 1630.2(h)-(j).

There is little doubt that Ms. Bateman's chemical sensitivity constitutes a physical impairment under the ADA. The remaining question is whether the physical impairment substantially limits one or more of her major life activities.

> (2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
>
>> (i) The nature and severity of the impairment;
>>
>> (ii) The duration or expected duration of the impairment; and
>>
>> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.
>
> (3) With respect to the major life activity of working–
>
>> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
>>
>> (ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

11

>   (A) The geographical area to which the individual has reasonable access;
>
>   (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
>   (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

28 C.F.R. § 1630-2(j)(2)-(3).

Ms. Bateman alleges that her allergy, or chemical sensitivity, to dyes and unwashed fabrics limits the major life activities of seeing, breathing, and working. Ms. Bateman states that "Through medication and avoidance of dyes and unwashed fabrics, her condition would subside." (Plaintiff's brief, p. 16). Ms. Bateman argues that the fact that she has been able to hold other employment and lead an active life since leaving Wal-Mart is irrelevant to the disability analysis. (Id.) Ms. Bateman argues that the existence of a disability must be determined "without regard to mitigating measures such as medicines or assistive or prosthetic devices," citing 29 C.F.R. 1630(H) and *Harris v. H & W Contracting Co.*, 102 F.3d 516, 521 (11th Cir. 1996). In *Sutton v. United Air Lines*, 527 U.S. 471, 482-83 (1999), the United States Supreme Court held:

> Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures–both positive and negative–must be taken

> into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the Act. . . .
>
> Three separate provisions of the ADA, read in concert, lead us to this conclusion. The Act defines a "disability" as "a physical or mental impairment that *substantially limits* one or more of the major life activities" of an individual. § 12102(2)(A) (emphasis added). Because the phrase "substantially limits" appears in the Act in the present indicative verb form, we think the language is properly read as requiring that a person be presently–not potentially or hypothetically–substantially limited in order to demonstrate a disability. A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.
>
> The definition of disability also requires that disabilities be evaluated "with respect to an individual" and be determined based on whether an impairment substantially limits the "major life activities of such individual." § 12102(2). Thus, whether a person has a disability under the ADA is an individualized inquiry. ...

Because Ms. Bateman's impairment clearly is correctable or preventable by medication and avoidance of dyes and unwashed fabrics, she is not substantially limited in the major

13

life activities of breathing or seeing. In *Sutton*, the Court expressed reservation about whether working is a major life activity under the ADA but nevertheless stated:

> When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs....To be substantially limited in the major life activity or working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

527 U.S. 491-92.

In *Sutton*, the court concluded that the position of global airline pilot is a single job and that the plaintiffs who failed to meet the uncorrected vision requirements for that job could still utilize their skills in a number of other jobs including regional pilot and pilot instructor.

Ms. Bateman argues that her allergy restricts her ability to perform a class of jobs since she is precluded from any job in which she has to come into contact with dyes and unwashed fabrics; however, it is clear from Bateman's deposition testimony concerning the positions that she has held since leaving Wal-Mart that she is still capable of holding, and has in fact held, other retail positions that do not involve contact with dyes and unwashed fabrics.

Ms. Bateman has failed to establish that she has a disability.[4/] Because she has failed to prove the first element of a *prima facie* ADA case, it is unnecessary for the court to consider the other elements in a *prima facie* case or to address accommodation as "employers have no duty to accommodate an employee if the employee is not disabled under the ADA." *Swain v. Hillsborough County School Board*, 146 F.3d 855, 858 (11th Cir. 1998)

Based on the foregoing, Wal-Mart's motion for summary judgment (doc. #29) is due to be granted. A separate Final Judgment consistent with this Memorandum of Opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 30th day of September, 2003.

*(signature)*

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE

---

[4/] Generally, courts have concluded that employees with allergies or asthma are not disabled either because their conditions can be controlled by medication or because they are capable of obtaining other jobs in their field. See *Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir. 2001) (plaintiff was not disabled merely because her asthma render her unable to function in one particular smoke-infested office); *Muller v. Costello*, 187 F.3d 298 (2d Cir. 1999)("substantial physical activity without encountering debilitating allergens cuts against [ ] claim of disability" by person whose asthma was aggravated by second-hand smoke); *Gupton v. Commonwealth of Virginia*, 14 F.3d 203 (4th Cir. 1994)(person who was allergic to tobacco smoke did not establish that her allergy limited her ability to work by foreclosing her generally from obtaining jobs in her field); *Sanders v. FMAS Corp*, 180 F.Supp.2d 698 (D. Md. 2001)(because asthma was controlled by medication, asthma did not rise to level of disability that substantially impaired major life activity of working); *Reidman v. Hewitt & Associated, Inc.*, 2001 WL 506864 (D .Me. 2001)(frequent asthma attacks at work and outside the workplace were controlled by inhalers and rest and did not constitute a substantial limitation on the major life activity of breathing); *Mayers v. Washington Adventist Hospital*, 131 F.Supp.2d 743 (D. Md. 2001)(because medication brought plaintiff's asthma under control and evidence indicated only temporary difficulty in breathing when subject to the environmental conditions (excessive dust and heat) in former workplace or season changes plaintiff did not demonstrate that asthma substantially limited ability to breathe and because there was no evidence that condition precluded her from similar work in other buildings plaintiff did not establish that she was substantially limited in ability to work); *Tangires v. The Johns Hopkins Hospital*, 79 F.Supp.2d 587 (D. Md. 2000) ("since plaintiff's asthma is correctable by medication and since she voluntarily reused the recommended medication, her asthma did not substantially limit her in any major life activity."); *Edwards v. Manual Woodworkers & Weavers*, 1999 WL 33315653 (W.D. N.C. 1999)(allergy to dust did not foreclose plaintiff from finding job in general field of machine operations as opposed to sanding machine).